IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DOMINGUEZ FAMILY ENTERPRISES,            Case No. 3:22-cv-01691-SB
INC., an Oregon corporation,

                      Plaintiff,                 **OPINION AND ORDER**

       v.

JUANITA'S FOODS, a California corporation,

                      Defendant.

**BECKERMAN, U.S. Magistrate Judge.**

Dominguez Family Enterprises, Inc. ("Plaintiff") filed this declaratory judgment action against Juanita's Foods ("Defendant") on November 2, 2022. In its complaint, Plaintiff seek a declaration that its re-branding plan does not breach the parties' Trademark and Trade Name Consent Agreement (the "Consent Agreement") or violate Defendant's rights under the Lanham Act.

Defendant filed an action against Plaintiff related to the same Consent Agreement on August 25, 2022, in the District Court for the Central District of California (*see Juanita's Foods v. Dominguez Fam. Enters., Inc.*, Case No. 2:22-cv-06049-PA-PLA (C.D. Cal. Aug. 25, 2022) (the "California action"), and moves to dismiss, transfer, or stay this action under the first-to-file

PAGE 1 – OPINION AND ORDER

rule. (*See* Def.'s Mot., ECF No. 21.) Defendant also argues that Plaintiff's claims here are compulsory counterclaims in the California action. (*Id.* at 21-22.)

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338(a). For the reasons explained below, the Court grants Defendant's motion to transfer under the first-to-file rule.

## BACKGROUND

Plaintiff is an Oregon-based, family-owned manufacturer and seller of "salty snacks and other food offerings," and is best known for its tortilla chips. (Compl. ¶¶ 2, 7, ECF No. 1.) Juana "Juanita" Dominguez ("Mrs. Dominguez") and her husband, Antonio Dominguez ("Mr. Dominguez"), co-founded the business in 1977. (*Id.* ¶ 3.) Since that time, Plaintiff has sold its products under the name "Juanita's," the "diminutive form" of Mrs. Dominguez's first name. (*Id.*)

Defendant is a California corporation that also sells "certain Mexican specialty foods," such as "canned tripe stew," under the name "Juanita's." (*Id.* ¶¶ 4, 8, 20.) In 1988, Defendant sent Plaintiff a letter alleging that its use of Juanita's constituted trademark and tradename infringement. (*See id.* ¶¶ 4, 16, 18, 22.) Thereafter, the parties executed the Consent Agreement on or about December 31, 1991. (*See id.* ¶ 16; *see also id.* Ex. A at 1, 10-11, stating that the agreement was "made as of the 31st day of December, 1991," but Plaintiff's president and Defendant's general manager did not sign it until January 31, 1992 and April 15, 1992, respectively).

The Consent Agreement covered Defendant's "Juanita's" tradename and three federally registered trademarks, defined "'Juanita's Mark' . . . as the trademark Juanita's and any confusingly similar variants," defined "'Juanita's Tradename' . . . as any tradenames incorporating the word Juanita's in whole or in part, and any confusingly similar variant," and

provided that Plaintiff "will restrict all further sales of food products under the Juanita's mark and tradename to certain types of products and to the [Pacific Northwest] States of Alaska, Idaho, Wyoming, Nevada, Montana, Oregon and Washington[.]" (*Id.* Ex. A at 1, 3-4) (caps omitted). Specifically, Plaintiff could continue to use the Juanita's trademark and tradename to sell "Mexican bakery and snack food products" in the aforementioned "Pacific Northwest States," but Plaintiff could not do so with respect to (1) "any food product" outside of the Pacific Northwest States, or (2) "any meat (other than fried por[k] rind snacks), vegetable and sauce products[.]" (*Id.* at 3-5.)

The Consent Agreement further provided that Defendant may expand its use of the Juanita's trademark and tradename to areas that "overlap with Mexican bakery and snack food products," Plaintiff would not "file for or solicit a federal registration for the Juanita's Mark in the United States Patent and Trademark Office," and Plaintiff "expressly consented to [Defendant's] use of the Juanita's Mark and Tradename in the Pacific Northwest States in connection with the latter's sale of Mexican meat, vegetable and sauce products." (*Id.* at 2, 5) (caps omitted). Additionally, the Consent Agreement provided that although Plaintiff was "not on constructive notice" of any "prior uses" of the Juanita's trademark and tradename, and the parties were not aware of any "actual confusion, mistake or deception of customers," the parties would "do whatever is necessary, if anything, to prevent public confusion concerning their respective provision of Mexican food products under the Juanita's Mark and Tradename[.]" (*Id.* at 2-3, 6) (caps omitted).

Now, decades after executing the Consent Agreement, Plaintiff has "an imminent and impending plan to re-brand and honor both of its co-founders by providing [its food offerings] under designations based on a portmanteau of 'Juanita' and 'Antonio': Juantonio's[.]" (*Id.* ¶ 3)

(caps omitted). Plaintiff, however, alleges that Defendant is "currently threatening [it] with legal proceedings in connection with the [Juantonio's re-branding plan]," because Defendant believes that such a plan is a breach of the Consent Agreement and violates the Lanham Act. (*Id.* ¶¶ 4-5.)

Despite alleging that Defendant has "threatened in written communications to initiate legal proceedings" regarding the Juantonio's re-branding plan, Plaintiff acknowledges that in the already pending California action, Defendant alleges that Plaintiff breached the Consent Agreement and violated the Lanham Act in other respects. (*Id.* ¶¶ 5, 26.) Notably, Plaintiff also acknowledges that less than a week before it filed suit here, Defendant informed Plaintiff that it believed that Juantonio's was "confusingly similar" to Juanita's and violated the Consent Agreement and trademark law, and that it planned to file a motion to enjoin Plaintiff's use of Juantonio's, and modify the injunction already in place, in the California action. (*Id.* ¶¶ 29-30, 34; *see also* Ex. C at 3-4, making a "good faith attempt to begin the meet and confer process").

On November 2, 2022, Plaintiff filed this action against Defendant. Defendant's motion to dismiss, transfer, or stay followed on December 9, 2022, and the Court heard argument on February 21, 2023.

## DISCUSSION

## I.    PRELIMINARY MATTERS

### A.    Non-Dispositive Matter

#### 1.    Applicable Law

The Ninth Circuit has held that "a motion to transfer a case from one federal district court to another is a non-dispositive matter." *CPC Patent Techs. Pty Ltd v. Apple, Inc.*, 34 F.4th 801, 808 (9th Cir. 2022) (citing *In re U.S. Dep't of Educ.*, 25 F.4th 692, 699 (9th Cir. 2022)). In so holding, the Ninth Circuit explained that the magistrate judge's "order . . . merely transferred the action to another federal court and did not affect the viability of a claim or defense or the federal

appellate courts' ability to correct errors." *In re U.S. Dep't of Educ.*, 25 F.4th at 699. Consequently, the "transfer order was nondispositive, and the magistrate judge had jurisdiction to enter it." *Id.*

> ### 2. Analysis

For the reasons explained below, the Court exercises its discretion to transfer this case to the Central District of California under the first-to-file rule. The Court may transfer this action without the full consent of the parties to proceed before a U.S. magistrate judge, because the transfer to another federal district court is a non-dispositive matter. *See In re U.S. Dep't of Educ.*, 25 F.4th at 699; *see also Or. Cath. Press v. Ambrosetti*, No. 3:19-cv-01397-AC, 2020 WL 12769032, at *1-4 (D. Or. July 6, 2020) (denying a motion to lift a stay under first-to-file rule after addressing the factors of chronology of the lawsuits, the similarity of the parties, and the similarity of the issues).

> ## B. Judicial Notice

> ### 1. Applicable Law

In considering a motion under the first-to-file rule, a district court may take judicial notice of the record from the first-filed action because such proceedings have a direct relation to matters at issue (i.e., the chronology of the lawsuits and the similarity of parties and issues). *See Jiangmen Kinwai Furniture Decoration Co. Ltd v. Int'l Mkt. Ctrs., Inc.*, 719 F. App'x 556, 558 (9th Cir. 2017) (rejecting the plaintiff's argument that the Nevada court "violated the hearsay rule when it considered the [North Carolina district court's] record as a basis for dismissing [the plaintiff's] suit" under the first-to-file rule, and explaining that "[d]istrict courts are permitted to take judicial notice of other courts' proceedings, particularly where, 'those proceedings have a direct relation to matters at issue'") (citation omitted); *see also In re Bozic*, 888 F.3d 1048, 1051 n.1 (9th Cir. 2018) (addressing a case that was "the third of its kind" because "two related

putative class actions were already pending in California," taking judicial notice of "three minute orders" from the two pending actions, and noting that courts "may take judicial notice of records in other court proceedings" (citing *United States v. Howard*, 381 F.3d 873, 876 n.1 (9th Cir. 2004))).

2.    **Analysis**

The parties ask the Court to take judicial notice of (1) several filings from the California action (pleadings, motion papers and declarations, and courts orders, including minute and scheduling orders), (2) an application "taken from the website for the U.S. Pat[ent] and Trademark Office," (3) a printout from the Oregon Secretary of State's website, and (4) a return of service from the Court's docket (*see* ECF No. 12, which Plaintiff identified as ECF No. 13 in its request). (*See* Def.'s Req. Judicial Notice ("Def.'s Req.") at 1-6, ECF No. 23; Pl.'s Req. Judicial Notice ("Pl.'s Req.") at 1-10, ECF No. 26; Def.'s Suppl. Req. Judicial Notice ("Def.'s Suppl. Req.") at 1-3, ECF No. 29.) Plaintiff has also raised evidentiary objections in response to Defendant's initial request. (*See* Pl.'s Opp'n Def.'s Req. Judicial Notice ("Pl.'s Objs.") at 1-8, ECF No. 24.)

The Court grants Defendant's request to take judicial notice of its complaint and exhibits in the California action (*see* Def.'s Req. at 3, citing Ex. 1), because the Court must review that complaint to assess the relevant factors under the first-to-file rule. Accordingly, the Court overrules Plaintiff's objections to this request. (*See* Pl.'s Objs. at 2, 4-8.) The Court also grants Plaintiff's request to take judicial notice of the order denying the motion to modify the preliminary injunction in the California action (*see* Pl.'s Req. at 6, citing Ex. 5), because it was necessary for the Court to review and discuss the order to assess Plaintiff's arguments with respect to the first-to-file rule.

///

As reflected below, the Court relies in large part on Plaintiff's complaint and exhibits in this case to conclude that the first-to-file rule applies, and it was not necessary to evaluate the remaining exhibits for which the parties seek judicial notice. The Court therefore (1) denies as moot Defendant's remaining initial and supplemental requests for judicial notice, (2) denies as moot Plaintiff's remaining requests for judicial notice, and (3) overrules as moot Plaintiff's remaining evidentiary objections. *See Flectat Ltd. v. Melian*, No. 8:20-cv-00491, 2021 WL 3261633, at *1 n.1 (C.D. Cal. Apr. 27, 2021) ("The parties submitted numerous other evidentiary objections and requests for judicial notice. The Court need not resolve many of these objections and requests to decide the motion. Unless otherwise stated, the Court denies the requests for judicial notice and overrules the evidentiary objections as moot."); *In re Solid Landings Behavioral Health, Inc.*, No. 20-cv-01167, 2020 WL 5934304, at *1 n.2 (C.D. Cal. July 28, 2020) ("Because the Court need not take judicial notice of the transcript to resolve the Motion, it DENIES the RJN as MOOT and OVERRULES Movant's objections.").

## II.    FIRST-TO-FILE RULE

Defendant moves to dismiss, transfer, or stay this action pursuant to the first-to-file rule. (*See* Def.'s Mot. at 1, 5, 12, 22.) As explained below, the Court exercises its discretion to apply the first-to-file rule, and grants Defendant's motion to transfer.

### A.    Applicable Law

The first-to-file rule is "a judicially created 'doctrine of federal comity,' . . . which applies when two cases involving 'substantially similar issues and parties' have been filed in different districts." *In re Bozic*, 888 F.3d at 1051 (quoting *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982) and citing *Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015)). Under the first-to-file rule, a district court may "transfer, stay, or dismiss the second[-filed] case in the interest of efficiency and judicial

economy." *Id.* at 1051-52 (quoting *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997)).

"A district court has significant discretion to apply the first-to-file rule where the record supports application." *Jiangmen*, 719 F. App'x at 558 (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991)); *see also Alltrade*, 946 F.2d at 628 (explaining that "[t]he most basic aspect of the first-to-file rule is that it is discretionary; an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts") (simplified). In deciding whether the first-to-file rule applies, a district court must "analyze[] three factors: chronology of the lawsuits, similarity of the parties, and similarity of the issues." *Kohn*, 787 F.3d at 1240 (citing *Alltrade*, 946 F.2d at 625). The Ninth Circuit has explained that the first-to-file rule requires only "substantial similarity of parties," not "exact identity," and "[t]he issues in both cases also need not be identical, only substantially similar." *Id.* at 1240-41 (citations omitted).

### B.      Analysis

#### 1.      Chronology of the Lawsuits

The Court must "begin[] by analyzing which lawsuit was filed first." *Zou v. Mkt. Am., Inc.*, No. 19-cv-01282, 2019 WL 13218583, at *5 (N.D. Cal. Sept. 12, 2019) (brackets omitted) (quoting *Kohn*, 787 F.3d at 1240). The first factor—chronology of the lawsuits—"simply requires that the case in question was filed later in time." *Therapy Stores, Inc. v. JGV Apparel Grp., LLC*, No. 4:16-cv-02588, 2016 WL 4492583, at *4 (N.D. Cal. Aug. 26, 2016) (citing *Alltrade*, 946 F.2d at 628 and *Kohn*, 787 F.3d at 1240); *see also Zou*, 2019 WL 13218583, at *5 ("Courts should 'apply[] the first-to-file rule where the instant action was filed later in time.'") (citation omitted).

///

Defendant filed the California action on August 25, 2022, and Plaintiff filed this action on November 2, 2022. Accordingly, the first factor is satisfied. *See Alltrade*, 946 F.2d at 624-25 (holding that the first factor "clearly ha[d] been met" because the defendant in the second-filed action "filed its suit [one day] prior to [the plaintiff's]"); *Agri-systems v. W. Nat'l Assurance Co.*, No. 20-cv-00044, 2020 WL 6781685, at *3 (D. Mont. Nov. 18, 2020) ("The first-to-file rule simply requires a chronology of the actions. . . . Here, Western National filed the Minnesota Action before ASI filed this lawsuit, albeit by only a few hours.") (simplified); *Kokusai Semiconductor Equip. Corp. v. ASM Int'l, N.V.*, No. 3:18-cv-00323-AC, 2019 WL 1281290, at *4 (D. Or. Jan. 25, 2019) ("[Plaintiffs] filed . . . the California action on December 1, 2017, contending that [the defendant]'s products infringe seven patents. Plaintiffs filed this action on February 20, 2018, asserting [the defendant]'s products are infringing an additional four patents. Thus, the California action was filed before the Oregon action, and the first prong supports applying the first-to-file rule."), *findings and recommendation adopted*, 2019 WL 1281228, at *1-2 (D. Or. Mar. 20, 2019).

### 2.    Similarity of the Parties

The second factor—substantial similarity of the parties—is satisfied because this action and the California action involve the same two parties. *See Alltrade*, 946 F.2d at 624-25 (noting that the Florida and California actions involved the same two primary entities and holding that the second factor "clearly ha[d] been met"); *Therapy Stores*, 2016 WL 4492583, at *4 ("The New York Suit involves the same parties—TSI and JGV—as the instant suit, but with their roles reversed. The only difference is that, in the instant suit, TSI has also brought claims against Lane Crawford, LLC, which TSI alleges is the alter ego of JGV. . . . Thus, this factor is also satisfied.").

///

PAGE 9 – OPINION AND ORDER

### 3.    Similarity of the Issues

The third factor—similarity of the issues—is also satisfied here. As discussed above, the Ninth Circuit has recognized that "[t]he issues in both cases . . . need not be identical, only substantially similar." *Kohn*, 787 F.3d at 1240-41 (citing *Int'l Fid. Ins. Co. v. Sweet Little Mex. Corp.*, 665 F.3d 671, 677-78 (5th Cir. 2011), *Adoma v. Univ. of Phx., Inc.*, 711 F. Supp. 2d 1142, 1148 (E.D. Cal. 2010), and *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1098 (N.D. Cal. 2006)). "To determine whether two suits involve substantially similar issues, [the Ninth Circuit] look[s] at whether there is 'substantial overlap' between the two suits." *Id.* at 1241 (quoting *Harris Cnty., Tex. v. CarMax Auto Superstores, Inc.*, 177 F.3d 306, 319 (5th Cir. 1999)).

In opposing Defendant's motion and reliance on the first-to-file rule, Plaintiff emphasizes that this case is limited to its use of the Juantonio's designation "*going forward*," whereas the California action is "*limited* to [Plaintiff's] *past* use" of the Juanita's designation. (Pl.'s Opp'n Def.'s Mot. ("Pl.'s Opp'n") at 1, ECF No. 25.) While the legal issues in this and the California action are not identical, both actions involve the same subject matter and substantially overlapping core issues. *See generally PETA, Inc. v. Beyond the Frame, Ltd.*, No. 10-cv-07576, 2011 WL 686158, at *1-2 (C.D. Cal. Feb. 16, 2011) ("[A]ll that need be present for the first-to-file rule to apply is that the two actions involve closely related questions or common subject matter, or that the core issues substantially overlap.") (simplified); *Kokusai*, 2019 WL 1281290, at *5 ("Courts have found substantial similarity between actions where the 'central question' is the same, even if specific legal issues within the separate actions vary.") (citation omitted). Both actions arise under and concern whether Plaintiff's marks breach the parties' Consent Agreement and violate the Lanham Act. (*See* Compl. ¶¶ 4, 9, 38, 40, 44, 47, alleging that the dispute concerns the parties' "rights and/or duties under the Consent Agreement and Lanham Act" and

whether Plaintiff breached the Consent Agreement and violated the Lanham Act); *cf. Valentino S.p.A. v. Mario Valentino S.p.A.*, No. 19-cv-06306, 2021 WL 6882327, at *9 (C.D. Cal. Apr. 9, 2021) ("Although the rights conferred by federal trademark law and [state] . . . law are outside of the terms of the contract, the scope of the parties' agreement determines what is actionable.") (citation omitted). Specifically, the courts in both actions will be required to evaluate the validity and strength of Defendant's Juanita's trademarks, the enforceability and validity of the Consent Agreement's terms, and whether Plaintiff's marks are likely to confuse customers, all of which could lead to conflicting court rulings.[1] (*See* Def.'s Mot. at 17-18; Def.'s Reply Supp. Mot. Dismiss at 11-13.)

Throughout its opposition, Plaintiff highlights that the judge in the California action denied the motion to modify the preliminary injunction to include the Juantonio's re-brand, and therefore the Juantonio's re-brand is not at issue in that case. (*See* Pl.'s Opp'n at 9-16; *see also* Pl.'s Req. Ex. 5 at 1-9, declining to "apply the safe-distance rule at the preliminary injunction stage" and holding that at the preliminary injunction "stage in the litigation, [Defendant] ha[d] not demonstrated a likelihood of confusion between 'Juanita's' and 'Juantonio's,'" and therefore "failed to meet one of the four essential elements for granting a preliminary injunction, or

---

[1] In addition, California law governs the contract issues here. (*See* Compl. Ex. A at 8, "[T]he parties agree that this [Consent] Agreement shall in all respects be interpreted, enforced, and governed by the laws of the State of California."). In transferring a second-filed case to another federal district court under the first-to-file rule, a judge from this district relied in part on the fact that the state law of the transferee court governed. *See Herer v. Ah Ha Publ'g, LLC*, 927 F. Supp. 2d 1080, 1090 (D. Or. 2013) ("[T]he bulk of the dispute will be governed by state contract law—presumably Texas, where the alleged licenses were [orally] agreed upon—rather than federal law, which makes Texas a more appropriate forum. . . . Presumably, a judge sitting in the Western District of Texas would be more familiar with the state-specific contract law governing the alleged license.") (citations omitted).

modifying the current one").[2] However, the court's opinion on which Plaintiff relies reveals that

the transferee court has already performed a preliminary analysis of the Juantonio's mark under

the applicable *Sleekcraft* factors, and concluded "at this stage of the litigation, Plaintiff has not

demonstrated a likelihood of confusion between "'JUANITA'S' and 'JUANTONIO'S.'" (Pl.'s

Req. Ex. 5 at 9, citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979).) Thus, the

transferee court has already performed the analysis central to Plaintiff's claims here, and its

opinion is clear that the court's analysis was only preliminary. (*See id.*) For this Court to engage in

the same analysis risks conflicting rulings. In any event, the Court finds that the substantial

overlap in the issues in the two cases supports transfer even if Defendant has not yet amended its

complaint, and the court has not modified the preliminary injunction, in the California action

specifically to encompass the Juantonio's re-brand in response to that court's preliminary

injunction.

For these reasons, the Court finds that the third factor (similarity of the issues) is satisfied

here, and therefore all of the relevant first-to-file factors support transferring this case to the

Central District of California. *See Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d

738, 750 (9th Cir. 1979) (noting that "the 'first to file' rule normally serves the purpose of

promoting efficiency well and should not be disregarded lightly," and that "increasing calendar

congestion in the federal courts makes it imperative to avoid concurrent litigation in more than

one forum whenever consistent with the rights of the parties") (citations omitted), *overruled on

other grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 989-90

(9th Cir. 2016).

---

[2] "[T]he 'safe distance' rule prevents an infringer trying to avoid the court's injunction against trademark infringement by making an insignificant change in the infringing mark or conduct and continuing its behavior." 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:4 (5th Ed. 2022).

#### 4.    Equitable Considerations

Plaintiff argues that even if the three factors are satisfied, equitable considerations weigh against the Court's application of the first-to-file rule. (Pl.'s Opp'n at 32-34.) The Court disagrees.

Plaintiff is correct that a district "court may discard the first-to-file rule even where the threshold factors are met if equitable considerations weigh against its application." *Or. Cath. Press*, 2020 WL 12769032, at *3 (citing *Alltrade*, 946 F.2d at 628). According to the Ninth Circuit, "bad faith, anticipatory suits, and forum-shopping" are considerations that may support a district court's "depart[ure] from the first-to-file rule." *Id.* at *2 (citing *Alltrade*, 946 F.2d at 628).

Plaintiff claims that Defendant has engaged in "inequitable gamesmanship," that "further delay would be inequitable," and that Plaintiff's choice of a home forum "deserves deference." (Pl.'s Opp'n at 32-34) (caps omitted). The record does not support Plaintiff's claims that Defendant has engaged in any gamesmanship, or that further delay, which stems largely from Plaintiff's filing of this new case instead of counterclaims in the pending California action, would be inequitable. Plaintiff's choice of forum argument also fails adequately to address that this is a second-filed case, and not an ordinary forum transfer analysis. *Cf. In re Nitro Fluids L.L.C.*, 978 F.3d 1308, 1311-12 (Fed. Cir. 2020) ("In a usual transfer analysis, requiring the movant to demonstrate that the balance of factors favors transfer serves to give deference to the plaintiff's choice of forum. . . . All else being equal, that choice in forum should be respected. The same deference, however, is not owed when a party is insisting on having two substantially overlapping proceedings continue at the same time before two different courts. Moreover, unlike in an ordinary transfer analysis, the focus of the first-to-file rule is to avoid potential interference in the affairs of another court.").

In sum, the Court finds that Plaintiff fails to identify any equitable considerations that support departure from the first-to-file rule, and that the interests of comity and judicial efficiency support transferring this case to the Central District of California.[3] *Cf. Herer*, 927 F. Supp. 2d at 1091 (reflecting that the court "s[aw] nothing in the record that would counsel against application of the first-to-file rule on any [of the equitable] bases," found that "the interests of comity and judicial efficiency . . . [supported] defer[ring] to the earlier filed action currently pending in the United States District Court for the Western District of Texas," and stated that "case should be transferred to the federal court in Western District of Texas, rather than dismissed").

## CONCLUSION

For the reasons stated, the Court GRANTS Defendant's motion to transfer this case (ECF No. 21), and otherwise DENIES Defendant's motion as moot. The Court also GRANTS IN PART Defendant's and Plaintiff's requests for judicial notice (ECF Nos. 23, 26), and otherwise DENIES as moot Defendant's and Plaintiff's requests for judicial notice and Defendant's supplemental request for judicial notice (ECF No. 29). The Court directs the Clerk of the Court to transfer this action to the United States District Court for the Central District of California, Western Division, sitting in Los Angeles, and to mail a copy of this Opinion and Order to that court, where the related case is pending under Case No. 2:22-cv-06049-PA-PLA.

**IT IS SO ORDERED.**

DATED this 24th day of February, 2023.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge

---

[3] Given this determination, the Court declines to address Defendant's argument that Plaintiff's declaratory judgment claims are compulsory counterclaims under Federal Rule of Civil Procedure 13(a). (Def.'s Mot. at 1, 5, 21-22.)